UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DENNIS J. TURNER, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 3:14-CV-662 JD |
| SUPERINTENDENT, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Dennis J. Turner, a *pro se* prisoner, has filed a writ of habeas corpus (DE 1) pursuant to 28 U.S.C. § 2254 challenging his conviction and 19-year sentence for a class B felony burglary committed in Boone County, Indiana, in *State v. Turner*, No. 06D01-1002-FB-0046.

After his conviction, Turner appealed, claiming that the evidence was insufficient to support his burglary conviction. (DE 10-3.) The Indiana Court of Appeals affirmed. (DE 10-5.) Turner sought review in the Indiana Supreme Court (DE 10-6), but his petition to transfer was denied. (DE 10-2.) Turner then filed a petition for post-conviction relief. (DE 10-7.) The post-conviction court denied some of Turner's claims on summary judgment and ordered an evidentiary hearing on his claim of ineffective assistance of appellate counsel. (DE 10-7.) On July 23, 2013, the trial court denied Turner's request for post-conviction relief. (DE 10-7.) Turner appealed from the denial of post-conviction relief, but the Indiana Court of Appeals affirmed the denial. *Turner v. State*, Cause Number 02A03-1302-PC-50, slip op. 9 (Ind. Ct. App. March 11, 2014) (DE 10-11.) Turner did not seek transfer to the Indiana Supreme Court for review of the denial of his post-conviction claims. (DE 10-8.) Thereafter, Turner filed this federal petition raising the same sufficiency of the evidence claim he raised on direct appeal and

the claim of ineffective assistance of appellate counsel he raised in post-conviction proceedings. (DE 1.)

Turner's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if

the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 555 U.S.—, 131 S. Ct. 770, 786 (2011). In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Turner's burden to rebut this presumption with clear and convincing evidence. *Id*.

First, Turner argues that there was insufficient evidence to have found him guilty of burglary. The Indiana Court of Appeals found there was sufficient evidence:

> Douglas Thompson and his wife, Bonnie, were friends of Turner's. In fact, Turner occasionally lived with the Thompsons and kept his belongings at their home. On September 3, 2008, Turner and Thompson were driving in Indianapolis looking for houses to burglarize. They stopped near Daugherty Drive and Turner got out of the car. They agreed that Turner would contact Thompson by cell phone when he was ready to be picked up.
>
> A short time later, Turner forced open the door to the sun porch of the home of Kent and Kelly McCarthy on Daugherty Drive, smashed a large interior glass door, and entered the home. Turner removed items from the home including sapphire and diamond earrings, gold earrings, a wood-cross necklace with a heart-shaped ivory inlay, two laptops, several computer-related devices, and an expensive Kensington brand computer bag. Turner left the home with these items and, while walking through an adjacent wooded area, called Thompson and asked to be picked up. The two maintained cell-phone contact until they met near South Michigan Road/Highway 421, where Turner got into Thompson's car and they returned to the Thompsons' home. Once there, they looked over the items taken from the McCarthys' home. Thompson and Turner later traded one of the stolen computers for drugs.
>
> Meanwhile, at about 2:15 p.m. that day, the McCarthys arrived home and discovered their home had been burglarized. Kent McCarthy notified authorities.

> Kent McCarthy noted that the back-yard gate to his yard was open. He told investigators of this and informed them that they never left the gate open. Investigators walked through the woods behind the McCarthy's property, following a path of disturbed vegetation through the woods, over a creek, and exiting approximately where Thompson later claimed he had picked up Turner.
>
> Turner became a person of interest in the McCarthy burglary in November 2008. When the investigators learned of Turner's friendship with the Thompsons, they checked the Thompsons' pawn history and learned that at about 2:15 p.m. on September 4, 2008, Bonnie Thompson pawned jewelry at an Indianapolis pawn shop that included sapphire and diamond earrings, gold earrings, and a wood cross necklace with an ivory-heart detail. Officials procured a search warrant for the Thompson home on November 13, 2008. Before serving the warrant, however, an investigator telephoned Thompson's wife so that she could let them in and avoid damage to her home. Coincidentally, Turner was in the same car when the investigator telephoned Thompson's wife. He asked to be let out of the car before the Thompsons returned home. Law enforcement officers served the warrant and discovered items that had been taken from the McCarthys' home, including a Kensington computer bag and several computer-related devices. The McCarthys later identified these items as the ones taken from their home. On December 1, 2008, Thompson gave a statement to the authorities implicating himself and Turner in the burglary.
>
> The State charged Turner with burglary as a class B felony. A jury trial was held on May 27, 2010, at which Turner represented himself. The jury found Turner guilty as charged. He was sentenced to nineteen years in prison.

*Turner v. State*, Cause Number 06A05-1006-CR-427, slip op. 1-2 (Ind. Ct. App. Jan. 28, 2011); (DE 10-7.)

Despite the Indiana Court of Appeals findings, Turner claims there was insufficient evidence to allow a jury to conclude either that he was at the residence on Daugherty Drive when the burglary took place or that he possessed any property from that burglary. (DE 1 at 5; 19 at 9-10.)

> The standard of review is a rigorous one: evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because we consider this claim on collateral review rather than direct appeal,

4

> [AEDPA] imposes an additional layer of defense onto this inquiry: we may grant relief on this claim only if the [State] Appellate Court applied the *Jackson* standard unreasonably to the facts of [the] case.

*Jones v. Butler*, 778 F.3d 575, 581-82 (7th Cir. 2015) (parallel citations omitted).

Turner's argument is largely premised on the fact that no one saw him enter the residence on Daugherty Drive. (DE 18 at 16.) However, the lack of direct evidence is not a basis for habeas corpus relief because "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. While there may not have been any eyewitness testimony placing Turner at the McCarthy residence, the record contains sufficient evidence supporting Turner's conviction for burglary.

To start, Douglas Thompson testified that on September 3, 2008, he and Turner drove around in his wife's car with the intent to burglarize homes. (Trial Trans. Vol. I, at 248, 250.) Thompson eventually dropped Turner off near Daughtry Drive and he then drove off. (*Id*. at 249.) After driving around for approximately one hour, Turner called Thompson to come pick him up. (Trial Trans. Vol. II at 251.) At trial, Thompson used a map to explain to the jury the location where he dropped Turner off and where he picked him up. (*Id*. at 252-53.) After picking up Turner, Thompson then drove both of them back to Thompson's house and sifted through everything that Turner had in his backpack, which included two computers and jewelry. (*Id*. at 254-55.) These items were later determined to be property taken from the McCarthy's home on Daughtry Drive. (*Id*. at 283-298.)

Thompson's wife also testified that at some point Turner gave her jewelry, (Trial Trans. Vol I at 238), which she pawned the next day. Because the description of the pawned jewelry was similar to the jewelry taken from the McCarthy's home, Detective Charles White of the Zionsville Police Department determined that the pawned jewelry - diamond and sapphire earrings and a wooden cross necklace-belonged to Ms. McCarthy. (Trial Trans. Vol. II at 284-85.)

The Zionsville Police Department also searched the Thompson's house, where Turner was staying. (Trial Trans. Vol. II at 286-95.) Officers located items which Detective White believed to be from the McCarthy residence. (*Id*. at 291.) They recovered a Kensington computer bag, a Belkin cable converter, a wireless internet card and a computer mouse. (*Id*. at 291.) The McCarthys' confirmed that those items were taken from their home. (*Id*. at 294-95.)

Moreover, during their investigation, the police followed a path from the McCarthys' backyard to the area where Thompson picked Turner up, which matched Thompson's description of the path, as described by Turner. (Trial Trans. Vol I at 218-221; Trial Trans. Vol II at 252-253; 276-282.) It appeared as if someone had recently walked down that path. (Trial Trans. Vol. II at 278.)

Viewing this evidence in the light most favorable to the prosecution, it was more than sufficient to support the jury's determination that Turner burglarized the McCarthys' home on Daughtry Drive on September 3, 2008. In rejecting Turner's claim, the Indiana Court of Appeals applied a standard that was consistent with *Jackson* and determined that there was sufficient

evidence to support Turner's conviction.[1] *See Turner v. State*, Cause Number 06A05-1006-CR-427, slip op. 1-2 (Ind. Ct. App. Jan. 28, 2011). Based on the record, this was not an unreasonable application of *Jackson*. The state court's rejection of Turner's claim was not unreasonable, and accordingly, the claim is denied.

Turner's remaining claim is that his appellate counsel provided ineffective assistance of counsel. (DE 1 at 7.)When a habeas petitioner fails to present a claim to the state's highest court, that claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 853-54 (1999). The respondent argues that since Turner failed to raise this claim with the Indiana Supreme Court, he cannot bring it here. In his traverse, Turner concedes this claim is without merit. (DE 18 at 19.) It is therefore denied.

As a final matter, pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Turner has not made a substantial showing of

---

[1] The court encapsulated the standard of review as follows: "When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from the evidence. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Turner,* Cause Number 06A05-1006-CR-427, slip op. 4 (citations omitted.). The court did not cite *Jackson*, but a state court need not cite to or even be aware of Supreme Court precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

the denial of a constitutional right, nor could jurists of reason debate the outcome of the petition or find a reason to encourage Turner to proceed further. Accordingly, the court declines to issue Turner a certificate of appealability.

For the reasons set forth above, the court **DENIES** the petition [DE 1] and **DENIES** the petitioner a certificate of appealability.

SO ORDERED.

ENTERED: November 6, 2015

                                                            /s/ JON E. DEGUILIO  
                                                            Judge  
                                                            United States District Court